**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDREW GORZKOWSKI,** : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:12-2349** |
| : | |
| **v.** : | **(JUDGE MANNION)** |
| **CAROLYN W. COLVIN,**[1] : | |
| **Acting Commissioner of** | |
| **Social Security** : | |
| : | |
| **Defendant** : | |

**M E M O R A N D U M**

The record is this action, (Doc. No. 8), has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

**I.   PROCEDURAL BACKGROUND**

Plaintiff Andrew Gorzkowski protectively applied to the Social Security Administration ("SSA") for SSI and DIB under the Act on January 12, 2010. (Tr. 104-113). Plaintiff's application was denied on June 2, 2010. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was

---

[1]On February 14, 2013, Carolyn Colvin became acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), she has been substituted as the defendant.

held on June 2, 2011 in Wilkes-Barre, Pennsylvania. (Tr. 42-76). Plaintiff was represented by counsel. (Tr. 45). In addition to plaintiff's testimony, (Tr. 48-67), the ALJ heard testimony from a vocational expert ("VE"). (Tr. 68-75). On August 12, 2011 the ALJ determined that plaintiff was not disabled within the meaning of the Act. (Tr. 14-27).

Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 13). On October 1, 2012, the Appeals Council denied the request for review. (Tr. 1-5). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Plaintiff filed the instant appeal of the Commissioner's decision on November 23, 2012. (Doc. No. 1). The parties have filed briefs in support of their respective positions. (Doc. Nos. 15, 17).

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson

2

v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).


## III.   DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's

impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

Here, the ALJ determined that plaintiff is not disabled within the meaning of the Act. He determined that plaintiff meets the insured status required by the Act. (Tr. 19). At the first step, he determined that plaintiff has not engaged in substantial gainful work activity at any time since the alleged onset date of June 1, 2009. (Id.). At step two, the ALJ concluded that the plaintiff's impairments (degenerative disc disease with chronic low back pain, stent placement for coronary artery disease, status as post elective sigmoid resection for diverticulitis, and suspected right shoulder ligament tear or inflamation) were severe within the meaning of the regulations. (Id.). At step three, he found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R Part 404, Subpart 1 (20 C.F.R. §404.1520(d)). (Tr. 21).

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §404.1567(b) and §416.967(b), with no restrictions on use of upper extremities, sitting, or using ramps and stairs occasionally. The ALJ found that he can frequently perform postural movements, and should have a sit/stand option every one and a half to two hour with a moderate production pace in a work environment with only occasional changes. (Tr. 21). At step four, he determined that the claimant is unable to perform past relevant work. (Tr. 25).  At step five, he found that there

are jobs in the national economy in significant numbers that the plaintiff can perform. (Tr. 25). Therefore, the ALJ concluded that plaintiff had not been under a disability as defined by the Act from June 1, 2009 through the date of the decision. (Tr. 26).

## IV.   EVIDENCE OF RECORD

The plaintiff has alleged disability since June 1, 2009. The evidence of record establishes that plaintiff was forty-eight years of age at the time of the alleged disability onset. He did not graduate from high school. (Tr. 47). Plaintiff worked as a laborer for a blacktopping company from 1995 through 2002. (Tr. 135). Plaintiff then worked as a truck driver for construction, stone hauling, and tire retail businesses from 2003-2005. (Id.). Starting in 2006, plaintiff worked as a driver delivering auto parts, which involved carrying products, which sometimes weighed up to 70 to 80 pounds, to and from the truck he was driving. (Tr. 135, 137). Plaintiff testified that he was laid off from this job on June 1, 2009. (Tr. 49, 62, 135, 346). However, he also said that he stopped working because of his medical conditions. (Tr. 128). He has applied for "light" jobs in some of the same industries he previously worked in, but has not been hired. (Tr. 49-50).

Plaintiff lives with his mother and brother. (Tr. 65). He testified to going grocery shopping, and helping his mother with cooking, dusting, dishes, and laundry. (Tr. 65-66). He does not do maintenance on the outside of the house,

5

such as mowing the lawn, nor does he run the vacuum cleaner. (Tr. 65). Plaintiff maintains a license and drives. (Tr. 65, 149). He attends church weekly. (Tr. 150). He largely spends his days watching TV. (Tr. 146, 150). He indicated that he has been depressed since his injuries began. (Tr. 151).

In 2001, plaintiff had a stent implanted for a blocked artery following a heart attack. (Tr. 53, 151, 184). He takes aspirin, cholesterol medications, and other drugs for his heart problems. (Tr. 53, 131). In October of 2007, plaintiff underwent an elective sigmoid resection for recurrent diverticulitis. (Tr. 286-290). Plaintiff has residual stomach problems, and takes Zantac daily. (Tr. 68). He experiences rectal bleeding. (Tr. 69). He continues to get treatment and testing for his bowel issues. (Tr. 69-70).

One of plaintiff's chief complaints is the daily pain he experiences in his back, which radiates into his legs. The medical evidence of record indicates that he has complained of back pain since 2005, following a truck accident, through the present. (Tr. 155, 308). An MRI from 2005 shows that plaintiff suffers from degenerative disc disease at the L3-4 and L4-5 levels, resulting in low back pain which extends into his left leg. Mild levoscoliosis[2] was also found. (Tr. 168). Dr. Elizabeth Karazim-Horchos diagnosed him with low back pain and suggested a course of physical therapy for his back in 2006. (Tr. 178, 180,

---

[2]Describes a spinal curve to the left. Spine-Health.com, http://www.spine-health.com/conditions/scoliosis/scoliosis-types.

182). It was reported that he attended physical therapy only sporadically, and he did not feel that it helped him. (Tr. 178). His back hurts more at the end of the day than at the beginning. (Tr. 175). Dr. Karazim-Horchos noted that plaintiff was a "poor historian" and that it was difficult to get a straight answer out of him. (Tr. 175). In August 2010, he complained to his primary care physician, Dr. James Kosik, that he is achy in his low back, but did not have any specific complaints otherwise. He indicated that he was trying to remain active. (Tr. 339).

Plaintiff received injections for back pain in March and April of 2006, but did not feel that they were very helpful. (Tr. 49, 171, 175). He was prescribed Tylenol and other medications for his back. (Tr. 175, 176). Plaintiff currently takes Vicodin for relief of his back pain, but he feels that it only works for three hours. (Tr. 49, 156, 308). The drug makes him jittery and unable to sleep. (Tr. 156). Plaintiff testified that his back pain would limit him to carrying 15 to 20 pounds every two hours or so, and he would need to sit after because he gets severe pain down his back and into his legs. (Tr. 62-63). He is not currently undergoing any other treatment for his back problems. (Tr. 51).

Plaintiff underwent a consultative exam by Dr. Kamlesh A. Patel in April 2010. (Tr. 307-311). His physical exam revealed that he has a normal range of motion, and he did not feel any tenderness on his spine. (Tr. 309). He did complain of back pain interfering in his daily activities. (Tr. 309). He also complained of carpal tunnel syndrome, resulting in pain in his wrists, primarily

the left, which also interferes with his daily activities. (Tr. 310). He also gets "pins and needles" in his hands. (Tr. 51). He testified that he has not seen any specialists to treat his hands, and does not take any medicines to help his carpal tunnel symptoms. (Tr. 51-52). He does sometimes wear gloves and use heating pads to alleviate his symptoms. (Tr. 51, 60).

Plaintiff fell outside of his home in March of 2011. (Tr. 67, 340). He hit the side of his arm, and was in great pain. (Tr. 67). Dr. Kosik sent him to see a specialist, but since he reported being in a great deal of pain, he went to the emergency room instead. (Tr. 67, 340). He testified that he was given a shot for the pain in the ER. (Tr. 67). The ER reports indicate that X-rays were taken, showing no dislocation or fracture. (Tr. 342). An MRI showed that there was a tear in the supraspinatus[3] tendon and partial tears in other tendons. (Tr. 341). He was given Vicodin and Prednisone for the pain at the ER. (Tr. 343). Plaintiff testified that his shoulder is "very painful." (Tr. 67).

Plaintiff was involuntarily committed to First Hospital of Wyoming Valley on March 7, 2011 on the petition of his mother. (Tr. 346). She was concerned about threats he made against his sister-in-law. (Tr. 346). Plaintiff was diagnosed with adjustment disorder with mixed emotional features and family problems, stemming from his anger over his sister-in-law fraudulently using his

---

[3]At the top of the shoulder blade. The Free Dictionary, http://medical-dictionary.thefreedictionary.com/Tendinitis

name to open a credit card resulting in monetary charges of $17,000 and damage to his credit. (Tr. 347). She is supposed to make restitution, but pays back only around $100 a month. (Tr. 347). Plaintiff was prescribed Xanax, and goes to therapy monthly. (Tr. 56, 57, 335). At an appointment with Dr. Kosik on April 27, 2011, plaintiff noted that he remained stressed over this issue, damage to his home he was financially unable to fix, and shoulder pain. (Tr. 335). He testified before the ALJ that he still has psychological issues, but that therapy and medication help him control them. (Tr. 57).

Dr. Minda Bermuder completed a physical RFC assessment of plaintiff on May 24, 2010. (Tr. 322-328). She found plaintiff's complaints and statements regarding his ailments to be partially credible. (Tr. 327). She found that his pain is severe, but that it does not significantly limit his daily activities. (Tr. 327). The VE testified that an individual with plaintiff's education, age, and work history, capable of performing medium work with the ability to frequently lift twenty pounds, with only occasional need to lift heavier weight, occasional ability to take ramps or stairs, and limited ability to work in extremely cold environments would be able to work as a bagger, packer, or janitor. (Tr. 70-71). She opined, however, that such an individual would not be able to work in the jobs which constitute the plaintiff's past employment. (Tr. 71). The VE also opined that an individual who was able to lift ten pounds frequently, could walk, stand, and sit as needed for light exertional activity, had the ability to change position from sitting to standing or vice versa every two hours, with limitations

9

on taking stairs and working in extremely cold environments, would be able to work as a laundry folder, office helper, or trimmer. (Tr. 72).

## V.    DISCUSSION

Plaintiff challenges the Commissioner's decision on three grounds: (1) that the ALJ did not properly recognize the evidence of plaintiff's torn tendons in his shoulder in making his determination about plaintiff's impairments and RFC; (2) the ALJ did not properly assess plaintiff's pain and erred in finding that plaintiff's testimony was not fully credible; and (3) the ALJ's behavior at the hearing denied plaintiff due process.

### A. Plaintiff's Shoulder Injury

Plaintiff argues that the ALJ did not properly recognize the uncontroverted evidence that plaintiff has multiple tendon tears. Plaintiff's shoulder injury occurred in March 2011, and the MRI diagnosing the tears and possible tears was done on May 19, 2011. (Tr. 67, 340-41). The injury occurred, therefore, only three months or so before plaintiff's June 2, 2011 hearing before the ALJ. Although the MRI analysis does suggest that there was a tear or multiple tears in the shoulder, the injury to the shoulder fails to meet the durational requirement of the regulations. 20 C.F.R. §404.1509 notes, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." *See also*

10

Cerrato v. Comm'r of Social Sec., 386 F.App'x 283, 285-86 (3d Cir. 2010); 42 U.S.C. §423(d)(1)(A) . Here, plaintiff made no showing that the injury would be expected to last that long.

The ALJ did, nevertheless, discuss and take into account the shoulder injury in his decision. A "suspected right shoulder ligament tear or inflammation" was included in the ALJ's finding of plaintiff's severe impairments. (Tr. 19). He noted that plaintiff had "complaints regarding his right shoulder," and that he limited plaintiff to light work as a result. (Tr. 24). He stated that he was limiting plaintiff to light work in "special consideration to his very recent and yet to be clearly diagnosed or assessed right shoulder pain issues." (Tr. 25). The ALJ did note, accurately, that plaintiff had not yet pursued significant treatment for the shoulder injury. (Tr. 24).

The ALJ's decision shows that despite the recency of plaintiff's shoulder injury and lack of a firm diagnosis and treatment plan, and the failure of the injury to meet the durational requirement of the regulations, he took the shoulder injury into account reasonably when making his determination of plaintiff's impairments and ability to work. The ALJ's decision regarding plaintiff's shoulder was reasonable and supported by substantial evidence.

B. Plaintiff's Credibility

Plaintiff next argues that the ALJ did not properly assess plaintiff's symptoms, including pain, and erred in finding plaintiff only partially credible.

11

Specifically, plaintiff contends that given his long work history, his testimony about his ability to work should be afforded substantial weight. Plaintiff is correct that when a plaintiff has worked a long time, his testimony about his ability to engage in work should be afforded credibility. Rieder v. Apfel, 115 F.Supp. 2d 496, 505 (M.D. Pa. 2000)(*citing* Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979)). However, "the ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference" by the court." Bickel v. Astrue, 2013 WL 3967546, at *10 (W.D. Pa. Aug. 1, 2013)(*citing* Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)). Medical evidence of record, a plaintiff's treatment history, and plaintiff's daily activities are all relevant in making credibility determinations. 20 C.F.R. §§404.1529(c), 416.929(c)(2).

Here, the ALJ did in fact take note of the plaintiff's extensive work history. (Tr. 75). He also clearly took into account plaintiff's assessment of his ability to work, noting that he was giving plaintiff "the benefit of the doubt" and determining that he was capable of only light work even though an RFC assessment determined that he was capable of medium work. (Tr. 24-25). The ALJ also heard testimony from plaintiff and asked several questions regarding his work history. (Tr. 50). He also heard testimony that plaintiff was looking for "light" work, which indicated that plaintiff felt that he had the ability to work. (Tr. 51). There is also evidence in the record that plaintiff's accounts are not always credible, with one doctor finding him a "poor historian." (Tr. 175). The ALJ's

12

decision reflects that he took into account plaintiff's own statements regarding his impairments and ability to work, as well as the medical evidence, including that plaintiff apparently left work not because he was injured, but because he was laid off, and made a reasonable credibility assessment.

Plaintiff also claims that it was improper for the court to consider evidence of plaintiff's daily activities to make a credibility assessment. While an ALJ should not use evidence of a plaintiff's daily activities to disprove a doctor's determination that a plaintiff is disabled, an ALJ may use such evidence to make a credibility evaluation. Conklin v. Comm'r of Social Sec., 2010 WL 2680278, at *6 (D.N.J. June 30, 2010)(*distinguishing* Rieder, 115 F.Supp. 2d at 504)). Here, the ALJ found that the plaintiff had several severe impairments, crediting the medical evidence of record. His decision reflects that he used evidence of plaintiff's daily activities to make his assessment of plaintiff's reliability as to how those impairments affect his ability to function. The ALJ's determination of plaintiff's credibility is based on substantial evidence.

## C. Due Process

Plaintiff finally argues that the ALJ's behavior at the hearing and subsequent criminal charges regarding workplace misconduct on the part of the ALJ cast "an atmosphere of doubt" over whether plaintiff's due process rights were violated. "Due process requires that any hearing afforded a claimant must be full and fair." Wanko v. Barnhart, 91 F.App'x 771, 773 (3d Cir. 2004)(*citing*

13

Richardson v. Perales, 402 U.S. 389, 401 (1971)). Absent evidence of bias or misconduct on the part of the ALJ, a court will not find that an ALJ interfered with a plaintiff's attempt to introduce evidence. Valenti v. Comm'r of Social Sec., 373 F.App'x 255, 258 (3d Cir. 2010). Here, plaintiff points to the subsequent criminal charges[4] filed against the ALJ regarding alleged misconduct, as well as portions of the hearing transcript which plaintiff believes show that the ALJ "seemed to ramble and switch gears at hearing without rhyme or reason," to show that the ALJ violated plaintiff's due process rights. Namely, plaintiff points to a section of the transcript showing that the ALJ hiccupped during the hearing, (Tr. 63), and a portion where he notes that he came in from a "tough hearing" causing his "mentation" and "enunciation" to slip. (Tr. 47). Plaintiff points to other parts of the hearing where plaintiff implies that the ALJ was asking off-topic and non-sequential questions.

A reading of the full transcript of the hearing in this case does not evince bias on the part of the ALJ in this matter. The transcript reveals that the ALJ asked plaintiff many questions about a wide variety of plaintiff's impairments, and offered plaintiff's attorney abundant opportunity to develop the record on all of plaintiff's impairments. Plaintiff fails to demonstrate that the ALJ kept the plaintiff from developing the record. There is no evidence of "rambling," and

---

[4]The criminal conduct pointed to by the plaintiff occurred nearly a year after the ALJ rendered his decision in this case. Thus, it is irrelevant to the matter of whether there was a lack of due process in plaintiff's case, and has not been considered by the court.

while the ALJ did change topics with frequency while questioning plaintiff about his impairments, he did not prevent plaintiff from fully discussing and explaining his various impairments. Thus, there is no showing of a lack of due process in this case.

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** plaintiff's appeal of the decision of the Commissioner is **DENIED**. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 21, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2349-01.wpd